LAWYERS FOR CLEAN WATER, INC.
Caroline Koch (Bar No. 266068)
 Email:  caroline@lawyersforcleanwater.com
Drevet Hunt (Bar. No. 240487)
 Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiffs*
ORANGE COUNTY COASTKEEPER and LOS ANGELES WATERKEEPER

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Ryan Waterman (State Bar No. 229485)
 E-mail: rwaterman@bhfs.com
225 Broadway, Suite 1670
San Diego, CA 92101
Tel: (619) 702-7569
Fax: (619) 239-4333

*Attorney for Defendants*
ASSOCIATED READY MIXED CONCRETE, INC. and A & A READY MIXED CONCRETE, INC.

*Additional Plaintiffs' Counsel Listed On Next Page*

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation; and LOS ANGELES WATERKEEPER, a California non-profit corporation;<br><br>        Plaintiffs,<br>    v.<br><br>ASSOCIATED READY MIXED CONCRETE, INC., a California Corporation; A&A READY MIXED CONCRETE, INC., a California Corporation;<br><br>        Defendant. | Civil Case No. 8:17-cv-00611-JVS-JDEx<br>**CONSENT DECREE** |

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
      Email:  colin@coastkeeper.org
Sarah Spinuzzi (Bar No. 305658)
      Email:  sarah@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965


LOS ANGELES WATERKEEPER
Arthur Pugsley (Bar No. 252200)
      Email: arthur@lawaterkeeper.org
Melissa Kelly (Bar No. 300817)
      Email:  melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone:  (310) 394-6162
Facsimile:  (310) 394-6178

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiffs Orange County Coastkeeper and Los Angeles Waterkeeper ("Plaintiffs"), and Defendants Associated Ready Mixed Concrete, Inc. and A&A Ready Mixed Concrete, Inc. ("Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS**, Los Angeles Waterkeeper is a non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS**, together, Plaintiffs are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters;

**WHEREAS**, Defendants operate batch plants located at: (1) 25901 Towne Centre Drive, Foothill Ranch, California 92610 ("Foothill Ranch Facility"), (2) 18030 Mount Washington Street, Fountain Valley, California 92708 ("Fountain Valley Facility", and referred to herein collectively as the "Orange County Facilities"), (3) 100 E. Redondo Beach Boulevard, Gardena, CA 90248 ("100 Gardena Facility"), and (4) 134 W. Redondo Beach Boulevard, Gardena, CA 90248 ("134 Gardena Facility", and referred to herein collectively as "the Gardena Facilities");

**WHEREAS**, the Settling Parties refer to the Orange County Facilities and the Gardena Facilities collectively as the "Facilities";

**WHEREAS**, Associated Ready Mixed Concrete, Inc. operates and controls the industrial activities at the Orange County Facilities;

**WHEREAS**, A&A Ready Mixed Concrete, Inc. operates and controls the industrial activities at the Gardena Facilities;

**WHEREAS**, storm water discharges associated with industrial activity at the Orange County Facilities and at the Gardena Facilities are regulated pursuant to the

National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342. Depending upon the particular Facility, these industrial activities may include, *inter alia*, unloading trucks transporting sand and gravel; vehicle maintenance, cleaning, and storage; vehicle fueling; transporting raw materials across the site; raw and finished materials storage; weighing aggregate and cement; mixing aggregate, water and cement to form concrete; and loading trucks with concrete;

**WHEREAS**, Defendants' operations at the Orange County Facilities and at the Gardena Facilities are permitted under the Storm Water Permit;

**WHEREAS**, Plaintiffs contend that Defendants' operations at the Orange County Facilities and at the Gardena Facilities result in discharges of pollutants into waters of the United States and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants assert that they have attempted to comply in good faith with the Storm Water Permit at their Orange County Facilities and Gardena Facilities;

**WHEREAS**, the 134 Gardena Facility presents particular complexities and challenges for storm water retention given that the facility consists of multiple, non-contiguous parcels;

**WHEREAS**, Defendants also operate concrete batch plant facilities throughout Coastkeeper and Waterkeeper's jurisdictions, and Defendants will implement retention BMPs designed to retain the maximum volume that can be retained within operating constraints above the 85th Percentile storm event at those facilities consistent with the BMPs described in paragraph 14 of this Consent Decree;

**WHEREAS**, the Storm Water Permit includes the following requirements for all permittees, including Defendants: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring and implementation program

("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards ("WQS");

**WHEREAS**, on February 2, 2017, Plaintiffs issued 60-day notice letters to Associated Ready Mixed Concrete, Inc., the registered agent of Defendant Associated Ready Mixed Concrete, Inc., the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board, and/or the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit, Water Quality Order No. 92-12-DWQ, as amended by Water Quality Order 97-03-DWQ, and as amended by Water Quality Order 2014-0057-DWQ, at the Orange County Facilities and the Gardena Facilities;

**WHEREAS**, on March 29, 2017, Plaintiffs re-issued a 60-day notice letter to A&A Ready Mixed Concrete, Inc., the registered agent of Defendant A&A Ready Mixed Concrete, Inc., the EPA Administrator, the State Water Board Executive Director, the Executive Officer of the Los Angeles Regional Water Board, and the Regional Administrator of EPA Region IX, with a notice of intent to file suit under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit, Water Quality Order No. 92-12-DWQ, as amended by Water Quality Order 97-03-DWQ, and as amended by Water Quality Order 2014-0057-DWQ, at the Gardena Facilities;

**WHEREAS**, the Settling Parties refer to the February 2 and March 29 letters together as the "60-Day Notices;"

**WHEREAS**, on April 4, 2017, Plaintiffs filed a complaint against Associated Ready Mixed Concrete, Inc. in the United States District Court, Central District of California, Civil Case No. 8:17-00611-JVS-JDE;

**WHEREAS**, on May 30, 2017, Plaintiffs filed an amended complaint against Associated Ready Mixed Concrete, Inc. and A&A Ready Mixed Concrete, Inc. in the United States District Court, Central District of California, Civil Case No. 8:17-00611-JVS-JDE, which is the operative complaint in this action;

**WHEREAS**, Plaintiffs allege Defendants are in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendants deny all allegations and claims contained in the 60-Day Notices and the amended complaint and reserve all rights and defenses with respect to such allegations and claims;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest and choose to resolve in full Plaintiffs' allegations in the 60-Day Notices and amended complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Orange County

Facilities and the Gardena Facilities at which the alleged violations took place are located within this District.

3.     The amended complaint states claims upon which relief may be granted against the Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.     Plaintiffs have standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.  OBJECTIVES

6.     It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and to resolve those issues alleged by Plaintiffs in its 60-Day Notices and amended complaint.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, the Storm Water Permit, and all applicable provisions of the Clean Water Act at the Orange County Facilities and the Gardena Facilities.

## II.  COMMITMENTS OF THE SETTLING PARTIES

### A.  <u>Agency Review, Effective Date, and Term of Consent Decree</u>

8.     **Agency Review**: Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, Plaintiffs shall submit the Consent Decree to the Court for entry.

9.      **Effective Date**: The Effective Date of this Consent Decree shall mean the day following the end of 45-day Federal Agencies review period described above or the date the Federal Agencies inform the Court that they have no objections to entry of this Consent Decree, whichever is sooner.

10.      **Term of Consent Decree**: This Consent Decree shall terminate on June 30, 2020 as to the Orange County Facilities and the 100 Gardena Facility, and given the additional BMPs to be implemented at the 134 Gardena Facility, on June 30, 2022 as to the 134 Gardena Facility unless one of the Settling Parties has invoked Dispute Resolution in accordance with paragraph 39, in which case the Consent Decree will terminate within fifteen (15) days' notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or as of the time when the Court's decision resolving the dispute is final and no longer subject to appeal, whichever is earlier.

10.1.      <u>**Early Termination**</u>. If a Defendant ceases industrial operations at any Facility and files a Notice of Termination ("NOT") under the Storm Water Permit prior to the termination of this Consent Decree, Defendant shall provide Plaintiffs with a copy of the NOT concurrent with its submittal to the Regional Water Board. Within ten (10) days of the Regional Water Board's approval of the NOT, Defendant shall provide written notification to Plaintiffs of the approval and remit all outstanding payments under the Consent Decree related to the Facility to Plaintiffs. Within ten (10) days of Plaintiffs' receipt of such notification, the Consent Decree will terminate as to the Facility for which the NOT was approved, unless one of the Settling Parties has invoked Dispute Resolution in accordance with the Dispute Resolution process described in paragraph 39, in which case the Consent Decree will terminate as to the Facility in accordance with paragraph 10.

**B.** **Discharges from the Facility to the Separate Storm Sewer**

    **i.** **Best Management Practices for Storm water Discharges**

11.    **Current and Additional Best Management Practices**: In addition to maintaining the current storm water BMPs at the Orange County Facilities and the Gardena Facilities, Defendants shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Defendants shall develop and implement BMPs to prevent and/or reduce contamination in storm water discharges from the Orange County Facilities and the Gardena Facilities consistent with use of BAT and BCT and/or in compliance with WQS.

12.    **Non-Structural BMPs**: Within thirty (30) days of the Effective Date, Defendants shall develop and implement the following non-structural BMPs at the Orange County Facilities and the Gardena Facilities.

    12.1.    **Sweeping**. Institute a daily sweeping program using a dry vacuum sweeper, and a weekly sweeping program with a PM-10 compliant and/or wet/dry vacuum sweeper, covering all exterior areas of the site exposed to rainfall or runoff and accessible to the sweeper. To document compliance with this paragraph, Defendants will institute an established sweeping route map to be followed during daily sweepings, record the length of time of sweeper operation, and provide these records to Plaintiffs within fourteen (14) days of receipt of a written request;

    12.2.    **Vehicle Maintenance**. Any outdoor vehicle and equipment maintenance will be conducted in accordance with written standard operating and incident procedures to be developed consistent with the SWPPP and in a contained area, i.e., an area where any storm water runoff or non-storm water flow will be captured and used in the industrial process(es) according to the

1            provisions of paragraphs 13 and 14;

2    12.3.      **Vehicle Fueling**. Any outdoor vehicle fueling will be conducted in
3            accordance with written standard operating and incident
4            procedures to be developed consistent with the SWPPP and in a
5            contained area, i.e., an area where any storm water runoff or non-
6            storm water flow will be captured and used in the industrial
7            process(es) according to the provisions of paragraphs 13 and 14;

8    12.4.      **Vehicle Storage**. Place drip mats or pads beneath trucks and other
9            Facility equipment likely to spill or leak while such equipment is
10           not under cover and is idle for more than 1 hour;

11    12.5.      **Source Controls**. Complete an evaluation of all outdoor storage of
12           miscellaneous equipment, obsolete tooling, and/or miscellaneous
13           materials, e.g., scrap metal, at the Facilities, and dispose of any
14           miscellaneous equipment, obsolete tooling, and/or miscellaneous
15           materials, e.g., scrap metal, no longer relevant to Defendant's
16           operation. To the extent Defendants comply with this paragraph by
17           disposing of miscellaneous equipment, obsolete tooling, and/or
18           miscellaneous materials, e.g., scrap metal, currently stored
19           outdoors at the Facilities, Defendants will comply with all
20           applicable disposal requirements. Any outdoor storage of
21           miscellaneous equipment, obsolete tooling, and/or miscellaneous
22           materials, e.g., scrap metal, remaining following the evaluation
23           required by this paragraph will be in areas designated by the
24           SWPPP as outdoor storage areas only;

25    12.6.      **Secondary Containment**. Defendants shall store all petroleum-
26           based materials and wastes and all concrete additives and coloring
27           agents that could come into contact with rainfall or runoff within
28           secondary containment having a volume at least 110 percent of the

contents of the largest vessel stored within the containment. Where formal walled containment is not present around additives and/or coloring agents, within thirty (30) days of the Effective Date, Defendants shall provide data and calculations demonstrating that low areas to which additives and coloring agents can drain meet the 110 percent containment requirement;

12.7. Defendants shall document implementation of the non-structural BMPs required by this section by submitting amended SWPPPs incorporating those BMPs as set forth in paragraph 23, below.

13. **Additional BMPs at 134 Gardena Facility**: A&A Ready Mixed Concrete, Inc. shall develop and implement the following structural BMP(s) at the 134 Gardena Facility.

13.1. Within ninety (90) days of the Effective Date, A&A Ready Mixed Concrete, Inc. shall submit a 134 Gardena BMP Plan to Plaintiffs for review and comment.

13.2. The 134 Gardena BMP Plan shall, at a minimum include: (a) an evaluation and description of, and a plan to eliminate, the existing wash out and return pit and associated activities from Assessor Parcel Numbers (APN) 6129-007-011 and 6129-007-012 and move those activities to APNs 6129-007-022, 6129-007-023, and 6129-007-024 (jointly, the Concrete Reclamation Area) so that the only industrial activities occurring in APNs 6129-007-011 and 6129-007-012 is vehicle or truck parking;[1] (b) an evaluation and description of, and a plan to implement, storm water retention

---

[1] In the event A&A Ready Mixed Concrete, Inc. proposes to conduct industrial activities in addition to, or other than, the activities listed, the Settling Parties agree to meet and confer to discuss A&A Ready Mixed Concrete, Inc.'s proposal and any related Consent Decree modifications.

BMP(s)[2] at the Concrete Reclamation Area designed to retain the maximum volume that can be retained within operating constraints above the 85th Percentile storm event based on the calculations that, at a minimum, specify (1) the drainage area contributing to the retention system, (2) the storm runoff volume associated with the maximum volume that can be retained within operating constraints above the 85th Percentile storm event; (3) the Concrete Reclamation Area's inlet, plan, and elevation views with dimensions, volume, and outlet; (4) the receiver of the discharge (e.g., municipal storm drain system, a receiving water body); (5) the volume of water to be pumped for use in the industrial process(es) during and following storm events; and (6) a quantitative hydrologic analysis, including use of site-specific run-off coefficients, that demonstrates how the retention capacity and 134 Gardena operating procedures will meet the design standard set out in this section; (c) an evaluation and description of, and a plan to implement, storm water retention BMP(s) at APN 6129-007-018 (the Shop Area) designed to retain the maximum volume that can be retained within operating constraints above the 85th Percentile storm event[3] based on the calculations that meet the requirements of section (b) above; (d) an evaluation and description of, and a plan to implement, temporary storm water retention BMP(s) designed to retain the maximum volume that can

---

[2] For purposes of this Consent Decree "storm water retention BMP(s)" means: preventing surface discharge of storm water runoff through infiltration, evapotranspiration, and/or capture and use.

[3] Subject to review as set out herein, maximum storm water retention at the Shop Area is three (3) additional 5,000 gallon tanks.

be retained within operating and physical property constraints from APN 6129-007-017 (the Batch Plant Area)[4]; (e) an evaluation and description of, and a plan to implement, BMP(s) designed to achieve the numeric limits set out in Table 1 for all discharges of storm water from areas of the 134 Gardena Facility other than the Concrete Reclamation Area and the Shop Area, including, but not limited to, review and evaluation of permanent storm water retention of storm water from the Batch Plant area in the Concrete Reclamation Area to retain the maximum volume that can be retained above the 85th Percentile storm event within operating and physical property constraints in the Batch Plant Area to be described with a site drawing and regional retention BMPs including with the County of Los Angeles; and (f) proposed interim deadlines for completion of the elements of the 134 Gardena BMP Plan;

13.3.    Plaintiffs shall have thirty (30) days from receipt to provide comments on the 134 Gardena BMP Plan to A&A Ready Mixed Concrete, Inc.;

13.4.    Within thirty (30) days of receipt of comments from Plaintiffs, Defendants shall incorporate Plaintiffs' comments into the 134 Gardena BMP Plan, or justify in writing why any comment is not incorporated ("Final 134 Gardena BMP Plan");

13.5.    The Final 134 Gardena BMP Plan developed and implemented pursuant to this Consent Decree is an obligation of this Consent Decree;

---

[4] Subject to review as set out herein, temporary maximum storm water retention at the Batch Plant Area is three (3) to four (4) 5,000 gallon tanks in the Concrete Reclamation Area.

13.6.    Any disputes about the Final 134 Gardena BMP Plan shall be resolved pursuant to the dispute resolution procedures set out in Section III, below;

13.7.    A&A Ready Mixed Concrete, Inc. shall complete implementation of the Final 134 Gardena BMP Plan within twenty-four (24) months of the Effective Date.

13.8.    A&A Ready Mixed Concrete, Inc. may seek an extension(s) of the 24-month deadline, such extension(s) not to be unreasonably withheld by Plaintiffs.

14.    **Enhanced Storm Water Retention BMP**: Defendants shall augment the storm water retention BMP(s) at the Orange County Facilities and at the 100 Gardena Facility so that the retention BMP(s) are designed to retain the maximum volume that can be retained within operating constraints above the 85th Percentile storm event based on the calculations to be completed as follows.

14.1.    Within ninety (90) days of the Effective Date, Defendants shall submit Enhanced Storm Water Retention Plan(s) to Plaintiffs for review and comment. The Enhanced Storm Water Retention Plan(s) shall, at a minimum, specify: (a) the drainage area contributing to the retention system, (b) the storm runoff volume associated with the maximum volume that can be retained within operating constraints above the 85th Percentile storm event[5]; (c) the Facility's inlet, plan, and elevation views with dimensions, volume, and outlet; (d) the receiver of the discharge (e.g.,

---

[5] Subject to review as set out herein, maximum storm water retention is as follows: four (4) additional 5,000 gallon tanks at Foothill Ranch Facility, four (4) additional 5,000 gallon tanks at the back and replacement of two (2) smaller tanks with one (1) 5,000 gallon tank at the front of the Fountain Valley Facility, and three (3) additional 5,000 gallon tanks at the 100 Gardena Facility.

municipal storm drain system, a receiving water body); (e) the volume of water to be pumped for use in the industrial process(es) during and following storm events; and (f) a quantitative hydrologic analysis, including use of site-specific run-off coefficients, that demonstrates how the retention capacity and Facility's operating procedures will meet the design standard set out in this section;

14.2. Plaintiffs shall have thirty (30) days from receipt to provide comments on the Enhanced Storm Water Retention Plan(s) to Defendants;

14.3. Within ten (10) days of receipt of comments from Plaintiffs, Defendants shall incorporate Plaintiffs' comments into the Enhanced Storm Water Retention Plan(s), or justify in writing why any comment is not incorporated ("Final Enhanced Storm Water Retention Plan(s)");

14.4. The Final Enhanced Storm Water Retention Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree;

14.5. Any disputes about the Final Enhanced Storm Water Retention Plan(s) shall be resolved pursuant to the dispute resolution procedures set out in Section III, below;

14.6. Defendants shall complete implementation of the Final Enhanced Storm Water Retention Plan(s) within two hundred and twenty (220) days of the Effective Date.

15. **Non-Storm Water Discharges**: As of the Effective Date, Defendants shall develop and implement BMPs designed to eliminate all unauthorized non-storm water discharges at the Orange County Facilities and at the Gardena Facilities.

## ii. Storm water Discharge Points, Sampling, and Visual Observations

16. **Storm water Discharge Points:** Defendants shall not discharge storm water from the Orange County Facilities or the 100 Gardena Facility in storm event(s) below or at storm event design standards established pursuant to paragraph 14, unless Consecutive Storm Events[6] occur that exceed a Facility's storm water capture capacity. A&A Ready Mixed Concrete, Inc. shall not discharge storm water from the Concrete Reclamation Area or the Shop Area after the Final 134 Gardena BMP Plan has been implemented, as described in paragraph 13, unless Consecutive Storm Events occur that exceed the Facility's storm water capture capacity. Defendants shall discharge storm water from the Orange County Facilities and the Gardena Facilities from the following discharge points only:

  16.1.  SP-1 and SP-2 at the Fountain Valley Facility;

  16.2.  SP-1 at the Foothill Ranch Facility;

  16.3.  SP-1 at the 100 Gardena Facility;

  16.4.  SP-1, SP-2, and SP-3 at the 134 Gardena Facility.

The specific locations of the discharge points described above are depicted on the site maps attached hereto as Exhibits 1 - 4.

17. **Rain Gauge**: Within thirty (30) days of the Effective Date, Defendants shall

---

[6] For the purposes of this Consent Decree, "Consecutive Storm Events" means when the "total volume of storm water received" at a given facility in a given period exceeds the sum of that facility's "certified storm water retention volume" + "total storm water reuse" during the same period ("Total storm water reuse" = 30 gallons per yard of concrete * total yards of concrete produced, and "certified storm water retention volume" is the Facility's storm water retention capacity, as certified in the Facility's Enhanced Storm Water Retention Plan or 134 Gardena BMP Plan). If Defendants rely on this "Consecutive Storm Events" definition to explain a storm water discharge from any given facility Defendants shall provide the following documentation: (1) "Total volume of storm water received," which equals Facility size (in sq. ft.) * (total inches of rainfall received in the given period / 12) * 7.48 gallons per cubic foot, (2) available storage volume at the outset of the storm (in gallons), which is to be estimated based on Defendants' best professional judgment, and (3) "total storm water reuse" in the process.

install a recording rain gauge capable of continuously recording rainfall at the Orange County Facilities and the Gardena Facilities to 0.01 inches. Defendants shall maintain the rain gauge in accordance with manufacturers' recommendations, maintain records of all maintenance, and provide rainfall and maintenance records within fourteen (14) days of a request by Plaintiffs.

18.     **Storm water Sampling**: Storm water monitoring procedures shall be implemented at the Orange County Facilities and the Gardena Facilities as follows:

18.1.     <u>Frequency</u>. During the 2017-2018 reporting year, Defendants shall collect at least four (4) samples of any stormwater discharge as a result of a Qualified Storm Event ("QSE"), as defined in Section XI(B)(1) and Section XI(B)(5) of the Stormwater Permit. For the remainder of the term of the Consent Decree, Defendants shall collect at least one (1) sample of a storm water discharge resulting from a QSE during the first half of the reporting year (July 1 to December 31) and at least one (1) sample from the second half of the reporting year (January 1 to June 30). If, however, prior to November 1 Defendants have not collected a sample from a storm water discharge resulting from a QSE at a Facility during the first half of the reporting year, Defendants shall collect a sample from a storm water discharge resulting from at least one (1) non-qualified storm event during operating hours. If, however, prior to March 1 Defendants have not collected a sample from a QSE at a Facility during the second half of the reporting year, Defendants shall collect a sample from a storm water discharge resulting from at least one (1) non-qualified storm event during operating hours. To satisfy the requirements of this Consent Decree, samples collected during non-qualified storm events must have been collected during storm events that occurred at least 24 hours after a discharge but

not more than 48 hours after a discharge. Defendants shall also collect samples of any discharge of retained storm water at the time of the discharge;

18.2. Location. During the life of this Consent Decree, Defendants shall collect samples from all locations where storm water discharges from the Facilities, including the discharge points listed in paragraph 16 above;

18.3. Parameters. All storm water samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 except to the extent that Defendants are entitled to reduce sampling according to paragraph 18.9;

18.4. Lab. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree, excepting pH which will be analyzed onsite using pH test strips accurate within 0.2 pH units and with the ability to detect pH up to 14 in accordance with the manufacturer's instructions unless two consecutive sampling events at a Facility are outside the range specified in Table 1, in which case Defendant shall thereafter use a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions at that Facility;

18.5. Detection Limit. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1;

18.6. Holding Time. All samples collected from the Facilities shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136, excepting pH which will be analyzed in accordance with paragraph 18.4, above;

18.7. Lab Reports. Defendants shall request that sample-analysis results

and associated chain of custody forms be reported to them within fourteen (14) days of laboratory receipt of the sample so long as Defendants incur no additional charge, otherwise Defendants will request that sample-analysis results and associated chain of custody forms be reported to them in the shortest time frame that would not result in additional charges;

18.8. Reports to Plaintiffs. Defendants shall provide the complete lab results and pH results of all samples collected at the Facility to Plaintiffs at the same time such results are required to be uploaded to SMARTS pursuant to Permit Section XI(B)(11);

18.9. Sampling Reduction. Defendants may discontinue analyzing storm water samples collected pursuant to this Consent Decree at any discharge location(s) for a constituent listed in Table 1 if: (a) the sample result for the Table 1 constituent is not detected above the limits stated in Table 1 for three (3) consecutive sample results, (b) Defendants have collected and analyzed the sample pursuant to this Consent Decree, and (c) that constituent is not otherwise required to be analyzed pursuant to Section XI(B)(6) or Table 1 of the Storm Water Permit.

19. **Storm Water Discharge Observations**: During the life of this Consent Decree, Defendants shall conduct visual observations at each discharge location during every rain event that produces a discharge during operating hours as defined in the SWPPP, and shall conduct visual observations at each BMP developed pursuant to paragraph 13.2 or 14 during every rain event to confirm whether a discharge occurs.

20. **Non-Storm water Discharge Observations**: During the life of this Consent Decree, Defendants shall conduct monthly non-storm water visual observations at each discharge location.

21. **Visual Observations Records**: Defendants shall maintain observation records

to document compliance with paragraphs 19 and 20, and shall provide Plaintiffs with a copy of these records within fourteen (14) days of receipt of a written request from Plaintiffs for the records.

### iii. Employee Training, SWPPP, and MIP

22. **Employee Training Program**: Within one hundred and eighty (180) days of the Effective Date, Defendants shall develop and implement an employee training program for employees responsible for implementing the SWPPP, MIP, and this Consent Decree at each Facility ("responsible employees"), including any training materials needed for effective implementation of the training program, for each Facility that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the activities required by the Storm Water Permit and this Consent Decree ("Training Program"):

22.1. <u>Language</u>. Defendants shall conduct the Training Program in the language or languages in which all responsible employees participating are fluent;

22.2. <u>BMP Training</u>. Defendants shall train all responsible employees on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly at the Facilities. Defendants shall train individual responsible employees on their specific responsibilities in implementing BMPs;

22.3. <u>Sampling Training</u>. Defendants shall designate an adequate number of responsible employees necessary to collect storm water samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols to ensure storm water samples are properly collected, stored, and submitted

1     to a certified laboratory;

2     22.4.     <u>Visual Observation Training</u>. Defendants shall provide training on

3               how and when to properly conduct visual observations to all

4               employees responsible for performing visual observations at the

5               Facilities;

6     22.5.     <u>Non-Storm Water Discharge Training</u>. Defendants shall train all

7               employees at the Facilities on the Storm Water Permit's

8               prohibition of non-storm water discharges, so that employees

9               know what non-storm water discharges are, that non-storm water

10              discharges can result from improper surface washing or dust

11              control methods, and how to detect and prevent non-storm water

12              discharges;

13    22.6.     <u>Employees</u>. All responsible employees at the Facilities shall

14              participate in the Training Program within thirty (30) days of

15              development of the Training Program and annually thereafter.

16              New employees hired after the development of the Training

17              Program shall participate in the Training Program within thirty

18              (30) days of their hiring date;

19    22.7.     <u>Knowledgeable Representative</u>. The Training Program shall be

20              provided by a private consultant or Defendant representative who

21              is Qualified Industrial Storm Water Practitioner ("QISP") certified

22              and familiar with the requirements of this Consent Decree and the

23              Storm Water Permit;

24    22.8.     <u>Training Records</u>. Defendants shall maintain training records to

25              document compliance with this section, and shall provide

26              Plaintiffs with a copy of these records within fourteen (14) days of

27              receipt of a written request; and

28    22.9.     <u>Integration of Training Program Updates into SWPPP</u>. Defendants

shall update the SWPPP for each Facility, if and when appropriate, to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling, and SWPPP implementation.

23. **SWPPP**: Within two hundred and ten (210) days of the Effective Date, Defendants shall amend the Facilities' SWPPPs to incorporate the requirements and BMPs set forth in this Consent Decree and submit the updated SWPPPs to Plaintiffs.

    23.1.    <u>Plaintiffs' Review of SWPPP</u>. Plaintiffs shall have thirty (30) days from receipt of the amended SWPPP to propose any changes. Within thirty (30) days of notification by Plaintiffs of any proposed changes to the SWPPP, Defendants shall make all of Plaintiffs' changes to the amended SWPPP or justify in writing why a change is not incorporated;

    23.2.    Defendants shall revise the SWPPP(s) if there are any material changes in a Facility's operations, including, but not limited to, changes to storm water discharge points or BMPs within forty-five (45) days of the changes, which will be subject to Plaintiffs' review and comment as provided in paragraph 23.1, above;

    23.3.    Compliance with the SWPPP, as amended and/or revised in accordance with this section, shall, at all times be a requirement of this Consent Decree.

24. **MIP**: Within two hundred and ten (210) days of the Effective Date, Defendants shall amend the Facilities' MIPs to incorporate the sampling and monitoring requirements set forth in this Consent Decree and submit the updated MIPs to Plaintiffs.

    24.1.    <u>Plaintiffs' Review of MIPs</u>. Plaintiffs shall have thirty (30) days from receipt of the amended MIP to propose any changes. Within thirty (30) days of notification by Plaintiffs of any proposed changes to the MIP, Defendants shall make all of Plaintiffs

changes to the amended MIPs or justify in writing why a change is
not incorporated;

24.2.    Defendants shall revise a Facility's MIP if there are any material
changes in a Facility's operations, including, but not limited to,
changes to storm water discharge points or BMPs. These MIP
revisions shall occur within forty-five (45) days of the changes,
which will be subject to Plaintiffs' review and comment as
provided in paragraph 24.1, above;

24.3.    Compliance with the MIPs, as amended and/or revised in
accordance with this section, shall, at all times be a requirement of
this Consent Decree.

**C.    Storm Water Action Plans**

25.    **Storm Water Discharge Reduction**: After complete implementation of
BMPs required by paragraphs 13.2(a), 13.2(b), 13.2(c), and/or 14, above, as applicable, if
a storm water discharge from the Orange County Facilities, the 100 Gardena Facility,
and/or the Concrete Reclamation Area and/or the Shop Area of the 134 Gardena Facility
occurs Defendants shall either confirm in writing that the discharge resulted from a storm
event above the design standard or Consecutive Storm Events exceeded the Facility's
storm water capture capacity within ten (10) business days of the discharge, or pursuant
to paragraph 26, below, shall develop and implement an action plan designed to achieve
the design standards set out in paragraph 13.2 or paragraph 14, as applicable ("Retention
Action Plan"). Any discharge from the Orange County Facilities or the Gardena Facilities
resulting from a storm event at or below the design standards set out in paragraphs 13.2
or 14, as applicable, that is not the result of Consecutive Storm Events that exceeded the
Facility's storm water capture capacity shall be a violation of this Consent Decree.

26.    In any reporting year that a Retention Action Plan is required, it shall be
submitted one hundred and twenty (120) days from the date of the discharge triggering
the Retention Action Plan. At a minimum, a Retention Action Plan shall include:

26.1. The location of the discharge;

26.2. Sampling results from the discharge;

26.3. An assessment of the size of the storm event that resulted in the discharge;

26.4. The identification of additional BMPs, including an evaluation of increased storm water retention BMP(s), that are designed to achieve compliance with the storm water design standards set out in paragraph 13.2 or 14, as applicable; and

26.5. Time schedules for implementation of the proposed BMPs so long as the time schedule(s) for implementation ensures that all Retention Action Plan measures are implemented as soon as feasible, but in no case later than October 1 of the next reporting year. Defendant may seek an extension of the October 1 deadline to implement structural BMPs for any storm water discharge that occurred between January 1 and June 30, such extension not to be unreasonably withheld by Plaintiffs.

27. **Storm Water Contaminant Reduction**: After complete implementation of the BMPs required by paragraph 13.2(e), if a storm water sample from the same sampling location for two (2) consecutive sampling events collected from storm water discharges from areas of the 134 Gardena Facility other than the Concrete Reclamation Area and the Shop Area contains concentrations of pollutants above the numeric limits set out in Table 1, below, pursuant to paragraph 28, below, A&A Ready Mixed Concrete, Inc. shall develop and implement an action plan designed to achieve the numeric limit(s) ("Contaminant Reduction Action Plan"). Defendants will not be in violation of the Consent Decree based on an exceedance of a Table 1 Numeric Limit in storm water discharge samples so long as those numeric limits are not incorporated in the Storm Water Permit.

28.    In any reporting year that a Contaminant Reduction Action Plan is required, it shall be submitted one hundred and twenty (120) days from A&A Ready Mixed Concrete, Inc.'s receipt of a storm water sample lab report demonstrating storm water sample results triggering an Action Plan as described in paragraph 27. At a minimum, a Contaminant Reduction Action Plan shall include:

28.1.    The identification of the contaminant(s) discharged in excess of the Table 1 numeric limit(s);

28.2.    An assessment of the source for each contaminant exceedance, including but not limited to any outdoor material storage areas and any outdoor vehicle and equipment maintenance areas;

28.3.    The identification of additional BMPs, including an evaluation of storm water treatment, that are designed to achieve compliance with the Table 1 numeric limit(s); and

28.4.    Time schedules for implementation of the proposed BMPs so long as the time schedule(s) for implementation ensures that all Contaminant Reduction Action Plan measures are implemented as soon as feasible, but in no case later than October 1 of the next reporting year. Defendant may seek an extension of the October 1 deadline to implement structural BMPs for any storm water discharge that occurred between January 1 and June 30, such extension not to be unreasonably withheld by Plaintiffs.

**Table 1**

| Contaminant | Numeric Limit (All but pH expressed as mg/L; hardness-dependent limits in bold) | Source |
|---|---|---|
| Total Suspended Solids | 100 | EPA Benchmark[7] |
| Oil and Grease (O&G) | 15 | EPA Benchmark |
| Chemical Oxygen Demand | 120 | EPA Benchmark |
| Total Recoverable Aluminum | 0.75 | EPA Benchmark |
| Nitrate Plus Nitrite-Nitrogen | 0.68 | EPA Benchmark |
| Total Recoverable Iron | 1.0 | EPA Benchmark |
| Total Recoverable Zinc | **0.0696** | Dominguez Channel TMDL[8] |
| Total Recoverable Lead | **0.0427** | Dominguez Channel TMDL |
| Total Recoverable Copper | **0.0097** | Dominguez Channel TMDL |
| pH | 6.5 to 8.5 s.u. | Basin Plan |

29.     **Plaintiffs' Review of Retention or Contaminant Reduction Action Plans**:

Plaintiffs shall have forty-five (45) days from receipt of any Action Plan(s) to propose

---

[7] The EPA Benchmarks are from EPA's 2015 Multi-Sector General Permit for Storm water Discharges Associated with Industrial Activity (MSGP).

[8] The Dominguez Channel TMDL limits are from the 2011 Total Maximum Daily Load for Toxic Pollutants in Dominguez Channel and Greater Los Angeles and Long Beach Harbor Waters. The limits apply to total recoverable, copper, lead, and zinc. Thus, Defendants shall measure those forms of the metals at the Gardena Facilities. The limits are based on a median total hardness of 50 mg/L as $CaCO_3$ as measured in the freshwater reach of Dominguez Channel. The Parties acknowledge that the State Water Resources Control Board (State Board) plans to re-open the Storm Water Permit to include TMDL limits for industrial dischargers during the term of this Consent Decree. The Settling Parties agree to meet and confer to amend the requirements of this Consent Decree to meet the final TMDL limits set forth by the State Board if they differ from the values set forth in Table 1.

revisions. Within thirty (30) days of receiving Plaintiffs proposed revisions, Defendants shall consider each of Plaintiffs' recommended revisions to an Action Plan(s), and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree.

**D.** **Consent Decree Compliance Monitoring and Reporting**

30. **Site Inspections**: During the Term of this Consent Decree, Defendants shall permit representatives of Plaintiffs to perform one (1) physical inspection ("Site Inspection") per year of the Orange County Facilities and of the 100 Gardena Facility during operating hours, except in the event there is a storm water discharge from these facilities that triggers the need to prepare a Retention Action Plan, then Plaintiffs shall be permitted to perform one (1) additional Site Inspection in that reporting year at the Facility(ies) where the discharge occurred. Plaintiffs shall be permitted to perform two (2) Site Inspections per year of the 134 Gardena Facility. Plaintiffs shall provide Defendants five (5) business days' notice for dry weather Site Inspections and two (2) business days' notice for wet weather Site Inspections. Defendants shall have the right to request an alternative date for said inspection that is within ten (10) days of the date noticed by Plaintiffs, unless Plaintiffs have noticed a wet weather Site Inspection. Plaintiffs shall comply with all safety instructions provided to Plaintiffs by Defendants' staff during all Site Inspections. During Site Inspections, Plaintiffs shall be allowed to inspect any SWPPPs, MIPs, and logs, sample any storm water discharges, and take photos and/or videos.

31. **Document Provision**: During the term of this Consent Decree, Defendants shall provide Plaintiffs with a copy of all documents and communications related to the Storm Water Permit submitted to the Regional Water Board, the State Water Board, and/or any Federal, State, local agency, county, or municipality. Such documents and reports shall be transmitted to Plaintiffs concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to the Storm Water Permit received by

Defendants from any Federal, State, local agency, county, or municipality shall be provided to Plaintiffs via email within three (3) business days of receipt by Defendants.

32. **Compliance Monitoring and Oversight**: Defendants agree to partially defray Plaintiffs' monitoring of Defendants' compliance with this Consent Decree in the amount of Forty-Five Thousand Dollars ($45,000.00) with $20,000.00 to be paid to Orange County Coastkeeper and $25,000.00 to be paid to Los Angeles Waterkeeper. The payments, in full, shall be made within ten (10) business days of entry of the Consent Decree by the Court. The payment due to Orange County Coastkeeper shall be made payable to: "Orange County Coastkeeper" and delivered by overnight mail, unless made by wire transfer, to Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. The payment due to Los Angeles Waterkeeper shall be made payable to: "Los Angeles Waterkeeper" and delivered by overnight mail to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

33. **Action Plan Payments**: If Defendants are required to submit an Action Plan(s) to Plaintiffs pursuant to this Consent Decree, Defendants shall make an Action Plan payment of $4,500.00 per Action Plan. Action Plan(s) related to the Orange County Facilities shall be made payable to: "Orange County Coastkeeper" and delivered by overnight mail, unless made by wire transfer, to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Action Plan(s) related to the Gardena Facilities shall be made payable to: "Los Angeles Waterkeeper" and delivered by overnight mail to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Payment shall be made contemporaneous with the submittal of the Action Plan(s).

E. **Environmental Mitigation, Litigation Fees And Costs, Stipulated Penalties, and Interest**

34. **Environmental Mitigation Project**: To remediate environmental harms resulting from allegations in the complaint, Defendants agree to make a payment of Twenty-Five Thousand Dollars ($25,000.00) to be paid to the Wetland & Wildlife Care

Center and Thirty Thousand ($30,0000) to be paid to FRIENDS of Cabrillo Marine Aquarium. These mitigation project fund payments will fund environmental project activities that will benefit the Southern California bight, and including specifically the Orange County and Los Angeles County watersheds. The payments, in full, shall be made within ten (10) business days of entry of the Consent Decree by the Court. The payment due to the Wetland & Wildlife Care Center shall be made by check sent overnight mail or via wire transfer, to: 21900 Pacific Coast Highway, Huntington Beach, California 92646. The payment due to FRIENDS of Cabrillo Marine Aquarium shall be made payable to: "FRIENDS of Cabrillo Marine Aquarium" C/O Caroline Brady and delivered by overnight mail to 3720 Stephen M. White Drive, San Pedro, CA 90731. Defendants shall provide Plaintiffs with a copy of such payment at the time it is made. The mitigation payment recipients listed in this paragraph shall report how the funds are used, or if they are awarded as grants to a third party, the recipient and/or purpose of grants made with the funds tendered, pursuant to this paragraph to the U.S. Department of Justice and the Settling Parties.

35. **Plaintiffs' Litigation Costs**: To partially reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, Defendants shall pay a total of Two Hundred Thousand Dollars ($200,000.00). The payment, in full, shall be made within ten (10) business days of entry of the Consent Decree by the Court, payable to: "Orange County Coastkeeper" and delivered by overnight mail, unless made by wire transfer, to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

36. **Stipulated Penalties**: Defendants shall make a remediation payment of One Thousand Dollars ($1,000.00) for each missed deadline included in the Consent Decree (defined as the applicable due date, plus three days) or the failure to collect a storm water sample required under this Consent Decree after the Effective Date. Payments due pursuant to this paragraph with respect to the Orange County Facilities shall be made to

the Wetlands & Wildlife Care Center. Payments due pursuant to this paragraph with respect to the Gardena Facilities shall be made to FRIENDS of Cabrillo Marine Aquarium. Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. Defendants shall provide Plaintiffs with a copy of each such payment at the time it is made.

37. **Interest on Late Payments**: Defendants shall pay interest on any payments, including fee or costs owed to Plaintiffs under this Consent Decree that Plaintiffs has not received by the date due. The interest shall accrue starting the first day after the payment is due and shall be computed at the U.S. Prime Rate plus 5% per year.

## III. DISPUTE RESOLUTION

38. The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Consent Decree. The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39. If a dispute under this Consent Decree arises or the Settling Parties believe that a breach of this Consent Decree has occurred, they shall follow the following procedure:

      39.1. <u>Meet and Confer</u>. A Settling Party invokes the dispute resolution procedures of this Section by notifying in writing the other Settling Party of the matter(s) in dispute. The Settling Parties shall schedule a meet and confer in good faith (either telephonically or in person) within ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention;

      39.2. <u>Settlement Conference</u>. If the Settling Parties fail to meet and confer, or cannot resolve a dispute through the informal meet and confer process, the Settling Parties agree to request a settlement

meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference;

39.3.    <u>Motion</u>. In the event that the Settling Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

40.    The Settling Parties shall be entitled to seek fees and costs incurred in the informal and formal Dispute Resolution process described in this section pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## IV.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.    **Plaintiffs' Waiver and Release of Defendants:** Plaintiffs, on their own behalf, and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, release Defendants, their officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims raised in the 60-Day Notices and/or the amended complaint up to the termination date.

42.    **Defendants' Waiver and Release of Plaintiffs:** Defendants, on their own behalf, and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, release Plaintiffs and their officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waives all claims related to the 60-Day Notices and/or the amended complaint up to the termination date.

43.     Nothing in this Consent Decree limits or otherwise affects the Settling Parties' rights to address or take any position that they deem necessary or appropriate in any formal or informal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date.

## V.     MISCELLANEOUS PROVISIONS

44.     **No Admission of Liability**: Neither this Consent Decree, the implementation of additional BMPs or any payment pursuant to the Consent Decree shall constitute or be construed as a finding, admission, or acknowledgement of any fact, law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

45.     **Execution in Counterparts**: The Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46.     **Signatures**: The Settling Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

47.     **Construction**: The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48.     **Authority to Sign**: The undersigned representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

49.     **Integrated Consent Decree**: This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the

agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Consent Decree.

50. **Severability**: In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. **Choice of Law**: This Consent Decree shall be governed by the laws of the United States.

52. **Full Settlement**: This Consent Decree constitutes a full and final settlement of this matter.

53. **Diligence**: Defendants shall diligently file and pursue all required permit applications for any structural BMPs required under this Consent Decree, and shall diligently procure contractors, labor, and materials needed to complete such structural BMPs by the required deadlines.

54. **Negotiated Agreement**: The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55. **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged, or terminated unless by a written instrument, signed by each of the Settling Parties and approved by the Court. Any request to modify any provision(s) of the Consent Decree, including but not limited any deadline(s) set out herein, must be made in writing at least five (5) business days before an existing deadline(s) applicable to the provision(s) proposed to be modified.

56. **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. Defendants shall notify Plaintiffs within ten (10) days of any assignment, in

conformity with the paragraph below.

57. **Notices and Submissions**: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Plaintiffs pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Colin Kelly
Sarah Spinuzzi
   Email: colin@coastkeeper.org
   Email: sarah@coastkeeper.org
Orange County Coastkeeper
3151 Airway Avenue
Suite F-110
Costa Mesa, CA 92626


Arthur Pugsley
Melissa Kelly
Los Angeles Waterkeeper
   Email: arthur@lawaterkeeper.org
   Email: melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401

With copies to:

Bruce Reznik
Executive Director
   Email: bruce@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

Unless requested otherwise by Defendants, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Defendants pursuant to this Consent Decree shall, to the extent feasible, be provided by

electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Mr. Randy Caillier
A & A Ready Mixed Concrete, Inc.
    Email: RCaillier@aareadymix.com
4621 Teller Avenue #130
Newport Beach, CA 92660

With copies to:

Mr. Alex Nichols
A & A Ready Mixed Concrete, Inc.
    Email: ANichols@aareadymix.com
4621 Teller Avenue #130
Newport Beach, CA 92660

Mr. Kurt Caillier
Associated Ready Mixed Concrete, Inc.
    Email: KCaillier@assocrmc.com
4621 Teller Avenue #130
Newport Beach, CA 92660

With copies to:

Mr. Alex Nichols
Associated Ready Mixed Concrete, Inc.
    Email: ANichols@assocrmc.com
4621 Teller Avenue #130
Newport Beach, CA 92660

Notifications of electronic communications shall be deemed submitted on the date that they are emailed. Notice by U.S. Mail shall be deemed submitted three (3) business days after mailing. Notice by overnight mail / delivery shall be deemed submitted one (1) business day after being deposited with an overnight mail/delivery service. Any change

of address or addresses shall be communicated in the manner described above for giving notices.

58.     **Deadlines Falling on Non-Business Days**: Any deadlines relating to this Consent Decree which fall on the weekend or on a federal holiday shall be extended to the following business day.

59.     **Force Majeure**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstances beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, employee negligence or misconduct, or Defendants' inability to obtain authorization or permission from the owner(s) of the real property where the Facilities are located for meeting compliance and/or settlement obligation(s). Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2017     By:_____
                                  Garry Brown
                                  Orange County Coastkeeper

Dated: _____, 2017     By:_____
                                  Bruce Reznik
                                  Los Angeles Waterkeeper

Dated: _____, 2017     By:_____
                                  Kurt Caillier
                                  Associated Ready Mixed Concrete, Inc.

Dated: _____, 2017     By:_____
                                  Randy Caillier
                                  A&A Ready Mixed Concrete, Inc.

APPROVED AS TO FORM

                                  LAWYERS FOR CLEAN WATER, INC.

Dated: _____, 2017          By: _____
                                  Caroline Koch
                                  Attorney for Plaintiffs

BROWNSTEIN HYATT FARBER
SCHRECK, LLP

Dated:          , 2017

By: _____
Ryan Waterman
Attorney for Defendants

**IT IS SO ORDERED.**

Date: November 17, 2017

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____
James V. Selna
United States District Judge

# Exhibit 1 – Fountain Valley Facility Site Map



**Exhibit 1**

# Exhibit 2 – Foothill Ranch Facility Site Map



Exhibit 2 – Foothill Ranch Facility Site Map

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T |

Robertson's
Ready Mix

Towne Center Drive

Baker Ranch Road

DA-1

Truck Parking

Truck Parking

Shea Baker Ranch

0'    50'    100'    150'

**Associated RMC Inc.**
**25901 Towne Centre Drive**
**Foothill Ranch, CA 92610**

### Facility Diagram

| Date: | File Name: | Rev: |
|---|---|---|
| 6/01/2017 | Lake Forest #55, #56 | 5 |

### Legend

| | | |
|---|---|---|
| Safe Refuge | ★ | #1 Lab/Office |
| Fire Hydrant | ● | #2 Office Storage |
| Storm Drain | | #3 Admix./Color Storage |
| Storage Tank | | #4 Returned Concrete |
| Utility Shutoffs | | #5 Batch Plant |
| Haz. Mat. Symbol | | #6 Haz. Mat./Waste Fluid* |
| Haz. Waste Symbol | | #7 Fueling Area |
| Property Line | | #8 Truck Rinsing |
| Evacuation Route | → | #9 Settling Ponds |
| Surface Drainage | → | #10 Material Storage |
| Fire Extinguisher | | #11 Equipment Storage |
| First Aid Kit | + | #12 Transfer Ramp |
| Emergency Eye Wash | | #13 Entrance/Exit |
| Sample Point | | #14 Rumble Strip |

Note 1: Site is paved.
Note 2: * = Bunded
Note 3: Operational Equipment is used throught the site

### Abbreviations

| | |
|---|---|
| Immediate (Acute) Health Hazard | IA |
| Delayed (Chronic) Health Hazard | DC |
| Fire Hazard | FH |
| Sudden Release of Pressure | SR |
| Reactive | R |
| Medical (Infectious) Waste | IW |
| Radioactive | RA |
| Extremely Hazardous | XH |
| Electricity | E |
| Gas | G |
| Water | W |
| Fuel | F |
| Drainage Area | DA |
| Industrial Activity | ID |
| Material Handling Processing | MP |
| Shipping and Recieving | S/R |
| Dust Particulate Areas | D/P |

### List of Chemicals

| | |
|---|---|
| 2.1). Acetylene | 6.3). Antifreeze |
| 2.2). Oxygen | 6.4). Waste Oil |
| 2.3). Tri Star Dissolve | 6.5). DEF |
| 2.4). Cement | 7.1). #2 Deisel Fuel |
| 2.5). Glenium 3400 | |
| 3.1). Sika Set NC | |
| 3.2). Sikaplast 500 | |
| 3.3). Sika Control 75 | |
| 3.4). Scolfield Black | |
| 3.5). Scolfield LR | |
| 3.6). Scolfield DR | |
| 3.7). Scolfield Yellow | |
| 3.8). MB Black | |
| 3.9). MB LR | |
| 3.10). MB DR | |
| 3.11). MB Yellow | |
| 5.1). Cement | |
| 5.2). Fly Ash | |
| 6.1). Motor Oil | |
| 6.2). Hydraulic Oil | |

**Exhibit 2**

# Exhibit 3 – 100 Gardena Facility Site Map



**Exhibit 3**

# Exhibit 4 – 134 Gardena Facility Site Map



Exhibit 4